**Boyd McCHRISTION, Plaintiff,**

v.

**Jack DUCKWORTH; Mr. Wagner; Mr. Bradly; Mr. Jasper; Gordon H. Faulkner; Cloid L. Shuler; Charles A. Penfold; Sergeant Wilke; Officer Skibanski, Defendants.**

**Civ. No. S 79–17.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

May 31, 1985.

Rick C. Gikas, Merrillville, for plaintiff.

Kermit Hilles, Deputy Atty. Gen., Indianapolis, for defendants.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on the Magistrate's Report and Recommendation on plaintiff's June 12, 1984 motion for temporary restraining order and preliminary injunction and plaintiff's objections thereto. Following the filing of plaintiff's written objections, on April 8, 1985, the court ordered the preparation of a transcript of the evidentiary hearing held by the Magistrate on plaintiff's motion on August 21, 1984. That transcript of the evidentiary hearing was filed May 2, 1985. Having examined the transcript, the exhibits submitted at the evidentiary hearing and the full record before this court on plaintiff's motion, for the following reasons, this court finds that the report and recommendation of the Magis-

trate is appropriate and correct in all respects and will be accepted by this court, with some additional comments. The plaintiff's motion for temporary restraining order and preliminary injunction will be denied.

Plaintiff, in his objections to the Magistrate's report and recommendation, raises three legal objections and three factual objections. The plaintiff disagrees with the Magistrate's conclusion that Indiana Code § 11–11–3–3 does not create a liberty interest in the receipt of unopened legal correspondence. The plaintiff also disagrees with the Magistrate's conclusion that *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), is dispositive of plaintiff's constitutional claims in that the Magistrate concluded that no constitutional violation occurred in this instance because the defendants complied with the *Wolff* dictate regarding the opening of legal mail. The plaintiff further objects to the legal determination of the Magistrate that no constitutional right exists authorizing an inmate to reject legal mail and have it returned to the sender unopened. The factual objections plaintiff make go to the question of the use of a fluoroscope at the Indiana State Prison, whether the plaintiff was involved in the postal money order scheme discovered to be operating at the Indiana State Prison and, whether plaintiff was responsible for the delay in receipt of three pieces of legal mail. These objections will be dealt with seriatim.

I.C. 11–11–3–3 reads:

If correspondence is to or from government officials, courts, attorneys, or representatives of the public news media, it may not be opened, read, censored, copied, or otherwise interfered with in regard to its prompt delivery or transmission. However, if the department has reasonable grounds to believe that a piece of correspondence may contain contraband or prohibited property, the department may open it in the presence of the confined person for the purpose of examining the contents for contraband or prohibited property. Upon conclusion of the inspection, the item of correspondence must be promptly delivered or transmitted without reading, censoring, copying, or further interfering with its deliverance or transmission.

The Indiana State Prison now follows a policy of opening all legal mail in the presence of inmates in order to examine the contents for contraband or prohibited property. This policy instituted by the defendants stems directly from the discovery of widespread involvement by inmates at the Indiana State Prison in a postal money order scheme which involved the altering of amounts on money orders sent into the prison and the discovery that contraband, including postal money orders, was being sent into the prison in legal mail. The evidence adduced at the evidentiary hearing clearly demonstrates that contraband was and is being sent into the Indiana State Prison through the vehicle of legal mail.

The plaintiff strongly objects to the Magistrate's conclusion that I.C. 11–11–3–3 does not create a liberty interest protected by the fourteenth amendment. Plaintiff argues that the Magistrate has taken "far too limited a view of the notion of 'liberty' under our Constitution." Plaintiff's Objections at p. 3. This court disagrees.

As this court recently stated:

A state may create a liberty interest by its statutes and by non-statutory sources. *Meachum* [*v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)] at 229, 96 S.Ct. at 2540; *Harris* [*v. McDonald,* 737 F.2d 662 (7th Cir.1984)] at 664; *Shango* [*v. Jurich,* 681 F.2d 1091 (7th Cir.1982)] at 1099; *Soto v. Cady,* 566 F.Supp. 773, 777 (E.D.Wis.1983). However, "a state created procedural right is not itself a liberty interest within the meaning of the Fourteenth Amendment." *Shango,* 681 F.2d at 1101. "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983) *citing*

*with approval Shango,* 681 F.2d at 1100–1101. *See Olim,* 461 U.S. at 250 n. 12, 103 S.Ct. at 1748 n. 12 ("[A]n expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause."). *Accord Hewitt* [*v. Helms,* 459 U.S. 460, 103 S.Ct. 864 (1983)], at 470, 103 S.Ct. at 871; *Harris,* [737 F.2d] at 665.

*Smith v. Stoner,* 594 F.Supp. 1091, 1105 (N.D.Ind.1984). " 'Property cannot be defined by the procedures provided for its deprivation any more than can life or liberty." *Cleveland Bd. of Education v. Loudermill,* —— U.S. ——, —— – ——, 105 S.Ct. 1487, 1492–1493, 84 L.Ed.2d 494 (1985).

■ *Olim* sets forth the test for determining whether an underlying and supporting parent substantive right exists which begets "yet other rights to procedures essential to the realization of the parent right," *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 463, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981). "[A] state creates a protected liberty interest by placing substantive limitations on official discretion." *Olim,* 461 U.S. at 249, 103 S.Ct. at 1747. A "crucial focus in determining whether an individual has a legitimate claim of entitlement to a protected liberty interest is the nature of the interest at stake, not the source of the purported liberty interest." *Smith,* 594 F.Supp. at 1105 *citing Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979); *Board of Regents v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

■ Here I.C. 11–11–3–3 does not place substantive limitations on official discretion regarding the opening of legal mail such that a protected liberty interest is created. The court's conclusion regarding 11–11–3–3 would likely be different if the statute forbade the opening of legal mail under any circumstances. But, I.C. 11–11–3–3 does not so forbid prison officials. It gives officials the discretion, pursuant to the terms of 11–11–3–3, to open legal mail in the presence of an inmate for the purpose of examining the contents for contraband or prohibited property where the officials have reasonable grounds to believe that contraband or prohibited property may be contained within the legal mail. I.C. 11–11–3–3 is in exact accord with the procedure set forth by the United States Supreme Court regarding legal mail as being in compliance with minimum due process rights. I.C. 11–11–3–3 does not go beyond the insuring of minimum due process rights nor does it need to go beyond the dictates of *Wolff.* The limitation of "reasonable grounds" is not a limitation of any substance or weight upon prison officials' discretion in the State of Indiana to determine to open legal mail in the presence of the inmate. I.C. 11–11–3–3 is a state created procedural right and is not itself a liberty interest within the meaning of the fourteenth amendment.

■ Even assuming for the sake of discussion that I.C. 11–11–3–3 does create a substantive liberty interest protected by the fourteenth amendment, the evidence adduced at the evidentiary hearing clearly demonstrates that the policy instituted by the defendants does not violate the terms of I.C. 11–11–3–3. The evidence shows that contraband is found with some frequency in legal mail. *See* Transcript at pp. 12, 16, 99–100. Among the items of contraband which have been discovered in legal mail are money, postal money orders, narcotic drugs, and marijuana. There was also evidence at the hearing that the presence of money or postal money orders could not be detected without opening the legal mail. *See* Transcript at pp. 21–22. Over one hundred instances have occurred in which contraband, including postal money orders, has been found in legal mail incoming to the Indiana State Prison at Michigan City, Indiana. Transcript at p. 100.

The defendants in this instance have more than reasonable grounds to believe that a piece of legal correspondence may contain contraband or prohibited property. Particularly, in the plaintiff's specific in-

stance, there is evidence in the record that the plaintiff was apparently involved in the postal money order scheme discovered operating at the Indiana State Prison. Transcript at pp. 102–03, 108. The prison officials had reasonable grounds in the plaintiff's case to believe that a piece of legal correspondence might contain contraband or prohibited property such that the defendants could choose to open the legal mail in the presence of the plaintiff for the purpose of examining the contents for contraband or prohibited property. All of the testimony by the defendants and other prison officials, credited by the Magistrate, was that the legal mail of plaintiff was not tampered with or altered prior to its being opened in the plaintiff's presence and that no one opening the plaintiff's mail read the contents of the mail or attempted to check the contents for textual contraband. Even assuming I.C. 11–11–3–3 creates a substantive liberty interest protected by the fourteenth amendment, the defendants are not violating the strictures of I.C. 11–11–3–3.

 It is important to remember and note that this is a prison case and that "[i]mprisonment carries with it the circumscription or loss of many significant rights and in some cases the complete withdrawal of certain rights, all of which are justified by the considerations underlying our penal system." *Soto v. Dickey,* 744 F.2d 1260, 1267 (7th Cir.1984) *citing Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Among the matters peculiarly within the province of confinement authorities is the preservation and maintenance of internal order and discipline and institutional security; wide ranging deference should be given to confinement facility authorities. *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). *See also Hewitt,* 459 U.S. at 473, 103 S.Ct. at 872; *Redding v. Fairman,* 717 F.2d 1105, 1112 (7th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984); *Smith,* 594 F.Supp. at 1107.

[Prison officials] must be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline to maintain institutional security. Such considerations are peculiarly within the province and professional expertise of correctional officers, and without substantial evidence to indicate such officials have exaggerated their response to these considerations, courts should defer to their judgment. Not only are such administrators in a better position to know and determine what action or remedies are needed and proper, but the operation of our correctional systems and facilities is within the responsibility of the Executive and Legislative branches of government.

*Soto,* 744 F.2d at 1269. *See also Procunier v. Martinez,* 416 U.S. 396, 404–405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974). "Lawfully incarcerated persons retain only a narrow range of protected liberty interests." *Hewitt,* 459 U.S. at 467–68, 103 S.Ct. at 869. Plaintiff's protected range of liberty interests does not include the right to have legal mail delivered unopened to him where prison officials have reasonable grounds to believe that the legal mail may contain contraband or prohibited property.

 Plaintiff's next legal objection deals with the Magistrate's conclusion that *Wolff v. McDonnell* controls the defendants' action in this instance and that the prison officials have complied precisely with the requirement in *Wolff v. McDonnell* regarding the opening of legal mail. Plaintiff basically argues for the overruling of the holding in *Wolff* regarding the opening of legal mail. This court declines to overrule *Wolff v. McDonnell* on this issue because the court agrees with the holding in *Wolff* that the opening of legal mail in an inmate's presence sufficiently protects the inmate's rights and that no censorship or chilling effect would occur. Plaintiff's underlying assumption throughout his entire filing detailing his objections is that the legal mail being opened in plaintiff's presence is being read. That is a fact that simply was not proven. Every prison official testifying at the evidentiary hearing testified that the mail was not being read.

The Magistrate credited that testimony. The Magistrate was in the position to assess the credibility of the witnesses and to determine their interests and his credibility determinations will not be disturbed. *See, e.g.,* Transcript at pp. 12, 105, 106–07, 128–29, 131.

The state's method of opening legal mail is in exact compliance with the United States Supreme Court dictate in *Wolff.* The method does not lend itself to continued controversy. Nor does the state's method chill communication or cause censorship. The fact that the plaintiff's attorneys testified that they felt forced to limit the information contained in letters to the plaintiff is a reflection, not that the prison officials were reading plaintiff's mail, but that the plaintiff believed that the officials were reading his mail, he informed his attorneys of that belief and they believed him.

■ Finally, regarding this legal objection of the plaintiff, plaintiff cites this court to the case of *Henry v. Perrin,* 609 F.2d 1010 (1st Cir.1979), *cert. denied,* 445 U.S. 963, 100 S.Ct. 1652, 64 L.Ed.2d 239 (1980), in which the First Circuit banned the practice occurring in the New Hampshire state prison system of reading legal correspondence and files for the purposes of searching for textual contraband. This court agrees with the First Circuit's position in *Henry* that legal correspondence should not be read nor legal files examined in order to search for textual contraband. However, that is not the issue in this lawsuit. There is not one piece of evidence or testimony that the defendants in this instance are searching for textual contraband or have ever searched for textual contraband. Here the evidence was that the contraband for which searches are conducted is items of property such as money, postal money orders, or narcotic drugs. The issue in this case is not the issue of a search for textual contraband, but is, instead, the issue of whether prison officials, pursuant to I.C. 11–11–3–3, have the right to open legal mail in the presence of an inmate. Plaintiff's second legal objection to the Magistrate's report and recommendation must be rejected.

■ Plaintiff's third legal objection to the Magistrate's report and recommendation concerns the Magistrate's conclusion that there is no right existing authorizing an inmate to reject legal mail and have it returned to the sender unopened. The plaintiff admits that the right to return mail is not established by any legal precedent and is not a right to be found directly under the constitution or laws of the state. Plaintiff argues that the power to order mail returned unopened is an alternative procedural right to prevent correspondence from being read by prison staff. Again, this argument is based on the assumption that the prison officials are reading the legal mail sent to the plaintiff. It has not been proven that the confidentiality in attorney-client communications between the plaintiff and his attorneys has been breached. This court agrees with the conclusions of the Magistrate set forth in his report and recommendation that legitimate reasons exist on the parts of prison officials to refuse to return purportedly legal mail unopened. This court will not enter into the discretionary decision-making area of prison officials regarding the running of the prison institution. Plaintiff's third legal objection must also be rejected.

■ Plaintiff objects to three factual findings contained in the Magistrate's report and recommendation. First, the plaintiff objects to the Magistrate's finding, in a footnote, that "While the prison has a fluoroscope, that device is ineffective in discovering certain types of contraband such as money orders and cash." Magistrate's Report and Recommendation at p. 3 n. 3. Plaintiff objects to the Magistrate's finding because there was testimony that the fluoroscope at the Indiana State Prison was not, at least as of the time of the evidentiary hearing, being used by prison officials searching for contraband in legal mail. Plaintiff apparently objects to the Magistrate's factual finding that a fluoroscope cannot discover money orders and cash in legal mail because the use of a fluoroscope

is a less intrusive means of searching for contraband in legal mail. Plaintiff's argument misses the mark. There was evidence that the fluoroscope cannot determine certain types of contraband including money orders and cash. Transcript at pp. 21–22. There was also testimony that the presence of such contraband items could not be determined in legal mail without opening that mail. *Id.* *See also* Transcript at pp. 82–83. Earlier attempts were made by prison officials to detect money orders with the fluoroscope and such attempts were unsuccessful. *Id.* at 83. The Magistrate's finding regarding the fluoroscope, whether or not the fluoroscope is actually used at this time to attempt to determine whether contraband is present, is correct and will not be disturbed by this court.

■ Plaintiff's second factual objection involves the Magistrate's finding that plaintiff was involved in the postal money order scheme operating at the Indiana State Prison and that altered postal money orders were found in plaintiff's cell. Report at 3. The plaintiff argues that the evidence adduced on this point at the evidentiary hearing was not probative evidence on this point and thus, the Magistrate's finding in this regard should be stricken. The court disagrees. Plaintiff's second factual objection basically involves the issue of the Magistrate's assessment of the credibility of the one witness who testified regarding plaintiff's involvement in the postal money order scheme. The witness who testified was present on the unit where plaintiff was incarcerated when plaintiff's cell was searched by other prison officials and money orders were found in plaintiff's cell, sewn into a blanket. The witness was called to act as a witness to the finding of the altered money orders. Transcript at 107–08. *See also* Transcript at 102–03.

It is clear that the Magistrate credited that witness' testimony even though the witness was not standing in the plaintiff's cell when the altered money orders were initially found sewn into a blanket. The Magistrate's credibility ruling is amply supported by the record in this case. *United*

*States v. Raddatz,* 447 U.S. 667, 683, 100 S.Ct. 2406, 2416, 65 L.Ed.2d 424 (1980), made it clear that the district court, in making its *de novo* determination of the record, could afford the magistrate credibility findings " 'such weight as [their] merit commands and the sound discretion of the judge warrants.' " *Id.* at 683, 100 S.Ct. at 2416 (quoting *Mathews v. Weber,* 423 U.S. 261, 275, 96 S.Ct. 549, 556, 46 L.Ed.2d 483 (1976)). Thus, on appeal, the district court's decision to adopt the magistrate's credibility rulings without hearing the testimony can only be said to be abuse of discretion if the record reflects that those rulings were themselves clearly erroneous and entitled to no weight. *United States v. Hardin,* 710 F.2d 1231, 1235 (7th Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 286, 78 L.Ed.2d 263.

■ This court accepts the credibility determinations of the Magistrate on all issues in this instance. The record amply supports the Magistrate's credibility determinations and the court concludes that the Magistrate's determinations of credibility have great merit and warrant acceptance by this court. The assessments of the Magistrate regarding the testimony of the witnesses and their demeanor are entitled to great weight. The Magistrate is a judge of long standing and experience and his credibility determinations will not be disturbed by this court.

■ There is evidence in the record, credited by the Magistrate, that the plaintiff was involved in the postal money order scheme operating at the Indiana State Prison. That factual conclusion will not be stricken from the Magistrate's report and recommendation. The final factual objection of the plaintiff is to the Magistrate's conclusion that the plaintiff was responsible for an approximately one month delay in receipt of three pieces of legal correspondence and that such delay was not related to the practices of the institution. The plaintiff points to testimony that the pass issued by a prison official to plaintiff to come to the institution investigator's office did not state the reason for such a

visit. That pass was issued soon after the plaintiff initially refused to accept the three pieces of legal correspondence. Plaintiff uses such testimony as proof that the delay in getting plaintiff's legal correspondence to the plaintiff was a result of ineffective procedure at the prison and not as a result of the plaintiff's obdurance. However, the plaintiff conveniently ignores testimony in the record by the institution investigator who issued the pass and by the prison official who caused the pass to be transmitted to the plaintiff. The institution investigator testified that he gave the message to the institutional officer to inform the plaintiff that the pass was for the purpose of receiving legal mail. The officer testified that when he informed the plaintiff of the pass the plaintiff was told that the pass involved the picking up or receipt of legal mail addressed to the plaintiff. The plaintiff was advised at the time the pass was issued that he could go to the institution investigator's office and pick up his legal mail and also some cigarettes. Transcript at p. 131, p. 143. There is evidence in the record from which the Magistrate could conclude and correctly conclude that the plaintiff was, indeed, the responsible party for the delay in receiving three pieces of legal correspondence. The delay in receipt was not the fault of prison officials. There is a proper procedure for the handling of legal mail already in place and operating at the Indiana State Prison. It is not the fault of prison officials that the plaintiff, for whatever reasons, chose not to participate in the existing procedure.

Accordingly, on the basis of the foregoing, the court hereby finds that the Magistrate's Report and Recommendation is appropriate and correct in all respects. On the basis of the Magistrate's Report and Recommendation and the additional discussion contained herein, the plaintiff's motion for temporary restraining order and preliminary injunction is hereby DENIED. Further, pursuant to 28 U.S.C. § 636(b)(1)(B), this court hereby DESIGNATES the United States Magistrate for this district, Gene B. Lee, to conduct such hearings as are necessary on the pending pretrial motions and to submit to this court proposed findings of fact and recommendations for the disposition of all pretrial motions in this matter.