**Arnold MAURICIO, Jr., Plaintiff,**

v.

**Robert BRONNENBERG, Thomas Steepro, Defendants.**

**No. S 84–24.**

United States District Court,
N.D. Indiana,
South Bend Division.

Nov. 26, 1986.

Arnold Mauricio, Jr., pro se.

James Hendrix, Legal Asst., Pendleton, Ind., for plaintiff.

Robert B. Wente, Deputy Atty. Gen., Indianapolis, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

On January 19, 1984, Arnold Mauricio, an inmate incarcerated at the Indiana State Prison (hereafter ISP), filed this complaint pursuant to 42 U.S.C. § 1983. Named as defendants are Robert Bronnenberg, Assistant Superintendent at the ISP, and Thomas Steepro, a Unit Team Manager at the ISP. Defendants have complied with the mandates of *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982).

Plaintiff's sole claim is that under Indiana law, Indiana Department of Correction (hereafter IDOC), and ISP written policy, rule and regulation, and established practice have created an expectation that he will not be transferred from one housing assignment at the ISP to another, without the benefit of a due process hearing.

Specifically plaintiff cites as support:

1. IC 11–10–1–1 et seq. pertaining to prisoner "Classification".
2. IC 11–11–5–1 et seq. pertaining to "Conduct and Discipline" within IDOC penal institutions.
3. IC 35–50–6–1 et seq. pertaining to "Credit Time".
4. ISP Standard Operation Procedures establishing minimum requirements for assignment to certain housing facilities at the ISP.

On December 1, 1983 plaintiff appeared before a Unit Team Committee (hereafter UTC), to answer to charges that he violated the ISP Adult Authority Disciplinary Code. The UTC is an organization of administrators, counselors, and correctional officers, who are charged with the administration and supervision of all inmates housed in one particular area of the institution. The UTC is authorized to conduct disciplinary hearings concerning minor charges of disciplinary infractions that can not result in a prisoner's "grievous loss". All breaches of the disciplinary code which could result in grievous loss are heard by a duly constituted Conduct Adjustment Board (hereafter CAB), unless the inmate waives this option.

On December 1, 1983, plaintiff was assigned housing in F dormitory at the ISP, which is a dormitory setting as contrasted to a traditional cellblock. The case manager for F Dormitory was Thomas Steepro. The case manager is the administrator who is the head of a UTC. Therefore, Steepro presided over the UTC for F dormitory as it convened on December 1, 1983 to hear the disciplinary charges against plaintiff. During the hearing on December 1, 1983 Steepro was of the opinion that plaintiff had become insolent. Steepro therefore suspended the hearing until further date and issued plaintiff a conduct report for being insolent. Steepro additionally contacted assistant superintendent Robert J. Bronnenberg and requested that plaintiff be removed from his housing assignment at F Dormitory. In support of his request Steepro specified that because of the tensions between himself and plaintiff resulting from the UTC hearing, his ability to maintain the orderly supervision of the inmates housed at F Dormitory would be threatened by plaintiff's continued presence. On December 1, 1983 Bronnenberg reassigned plaintiff to B cellhouse. Plaintiff complains that this reassignment required the necessity of a prior due process hearing.

The Constitution of the United States does not require that transfers of prisoners be for cause or that there be any hearing or notice prior to transfer. *See Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). In *Meachum* and *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), the Supreme Court held that an inmate is entitled to a hearing under the due process clause only where state law or practice unambiguously

has created a liberty interest by conditioning such transfers on proof of serious misconduct or occurrence of other events. *Meachum,* 427 U.S. at 225–230, 96 S.Ct. at 2538–41. This principle has been applied in many aspects of prison administration. *See Greenholtz v. Inmates of Nebraska Penal and Correction Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Caldwell v. Miller,* 790 F.2d 589 (7th Cir.1986); *Higgins v. Isenbarger,* 798 F.2d 203 (7th Cir. 1986). See also *Corgain v. Miller,* 708 F.2d 1241 (7th Cir.1983).

In *Shango v. Jurich,* 681 F.2d 1091 (7th Cir.1982), the Seventh Circuit stated:

Proceeding on "the basis that Warden DeRobertis had a good faith belief that Shango posed a threat to the safety of Stateville," id. at 1202, the court held that administrative regulations of the Illinois Department of Corrections were not followed by prison officials with respect to Shango's transfer. The court interpreted these regulations to require a hearing prior to an inmate's interprison transfer, viewing the requirement as vesting a personal right to such a transfer. The court reasoned that the existence of the regulations created a justifiable expectation on the part of inmates that no transfer would occur without a hearing. This expectation, the court held, constitutes a liberty interest protected by the Fourteenth Amendment's due process clause. Because Shango was transferred without a hearing, the court concluded that he had been deprived of liberty without due process of law. Moreover, the court viewed the prison official's failure to provide him with a hearing as a *per se* violation of the Fourteenth Amendment's equal protection clause. (Footnote omitted)

681 F.2d 1094–1095. The Seventh Circuit, while reversing the district court began their opinion in *Shango* by applying the *Meachum* analysis. The court held that an inmate has no liberty interest in remaining at any particular penal institution.

The court in *Shango* next analyzed the prisoner's claim in the context of a "state created" liberty interest. The court held that a state could create such a liberty interest by statute or in some cases by regulation. 681 F.2d at 1099–1100. However, the court found that the Illinois regulations placed no substantive restrictions upon the discretion of prison administrators in making transfer determinations and therefore no liberty interest was created.

In concluding that the state procedures do not create liberty interests the Court of Appeals held:

A liberty interest is of course a substantive interest of an individual; it cannot be the right to demand needless formality.

\*　　\*　　\*　　\*　　\*　　\*

Constitutionalizing every state procedural right would stand any due process analysis on its head. Instead of identifying the substantive interest at stake and then ascertaining what process is due to the individual before he can be deprived of that interest, the process is viewed as a substantive end in itself.

\*　　\*　　\*　　\*　　\*　　\*

If a right to a hearing is a liberty interest, and if due process accords the right to a hearing, then one has interpreted the Fourteenth Amendment to mean that the state may not deprive a person of a hearing without providing him with a hearing.

681 F.2d at 1100–01.

The recent decision of *McChristion v. Duckworth,* 610 F.Supp. 791 (N.D.Ind. 1985), is a comprehensive and dispositive exposition on "state created liberties." At the center of *McChristion* was the Indiana statute concerning the opening of an inmate's legal mail by prison officials, IC 11–11–3–3. The plaintiff, in his § 1983 complaint, argued that IC 11–11–3–3 created a liberty interest to the end that his legal mail would not be opened unless prison administrators could show that the correspondence contained contraband or prohibited property. Plaintiff reasoned that but for the existence of such a condition

there was a bilateral expectation that his legal mail would not be opened. In fact the prison had instituted a policy whereby all legal mail was opened in the presence of the receiving inmate by prison officials.

While citing *Olim v. Wakinekona, supra,* in *McChristion,* Judge Lee of this court turned to the court's previous decision in *Smith v. Stoner,* 594 F.Supp. 1091, 1105 (N.D.Ind.1984), in which it found that a state created procedural right is not an end to itself, but must be correspondent to a substantive right:

> A state may create a liberty interest by its statutes and by non-statutory sources. *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) at 229, 96 S.Ct. at 2540; *Harris v. McDonald,* 737 F.2d 662 (7th Cir. 1984) at 664; *Shango v. Jurich,* 681 F.2d 1091 (7th Cir.1982) at 1099; *Soto v. Cady,* 566 F.Supp. 773, 777 (E.D. Wis.1983). However, "a state created procedural right is not itself a liberty interest within the meaning of the Fourteenth Amendment." *Shango,* 681 F.2d at 1101. "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983) *citing with approval Shango,* 681 F.2d at 1100–1101. *See Olim,* 461 U.S. at 250 n. 12, 103 S.Ct. at 1748 n. 12 ("[A]n expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause.") *Accord Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864 [74 L.Ed.2d 675] (1983), at 470, 103 S.Ct. at 871; *Harris,* [737 F.2d] at 665.

*Smith v. Stoner,* 594 F.Supp. 1091, 1105 (N.D.Ind.1984). "Property cannot be defined by the procedures provided for its deprivation any more than can life or liberty." *Cleveland Bd. of Education v. Loudermill,* 740 U.S. 532, 540–42, 105 S.Ct. 1487, 1492–1493, 84 L.Ed.2d 494 (1985).

*McChristion,* 610 F.Supp. at 793–794.

Judge Lee found that a liberty interest is created only if some real, measurable restriction is placed on a prison administrator's discretion:

> *Olim* sets forth the test for determining whether an underlying and supporting parent substantive right exists which begets "yet other rights to procedures essential to the realization of the parent right," *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 463, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981). "[A] state creates a protected liberty interest by placing substantive limitations on official discretion." *Olim,* 461 U.S. at 249, 103 S.Ct. at 1747.

*McChristion,* 610 F.Supp. at 794. The court concluded that the Indiana procedures regarding the opening of prisoners' mail did not create any protected liberty interest. Neither have Jack R. Duckworth, or his subordinates, by practice or custom created a liberty interest or expectation.

Neither inter or intra-institutional transfer cases state a claim unless substantive restraints and restrictions are placed upon the discretion of the decisionmakers. *Caldwell v. Miller, supra; Corgain v. Miller, supra; Shango v. Jurich, supra.* This court has consistently applied these standards to such prisoner claims of entitlement to visitation, assignment to trustee dormitories, precluding prison administrators from opening a prisoner's mail, the granting of clemency, temporary release, parole, and work release.

All of the relevant procedures, statutory, administrative, or otherwise, that in any way affect inter or intra-institutional reassignments, are now before this court. None of these establish any liberty interest or expectation among IDOC or ISP prisoners that they will be afforded a due process hearing at which prison administrators must show that the subject inmate is guilty of misconduct, prior to and prerequisite to ordering an intra-institutional transfer.

The Supreme Court has recently espoused a measure of conduct in two cases which must be shown before a constitutional infringement protected by 42 U.S.C. § 1983 is implicated. Second, and more

importantly, the Court emphasized that only those rights directly derived from the Constitution, its Bill of Rights, and Amendments will be protected by 42 U.S.C. § 1983.

In *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Court reviewed the § 1983 complaint of an inmate who argued that his liberty interest of freedom from bodily injury "without due process of law" within the meaning of the Fourteenth Amendment had been abridged when the jail staff left a pillow case on the jail floor which the plaintiff slipped on resulting in physical injury. At 106 S.Ct. 664, the Court cited its prior holding in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), wherein it held that all that need be shown in a § 1983 suit is that a constitutional deprivation occurred and that there is no requirement of a showing of the defendant's "state of mind". The Court concluded that the unintentional loss of a liberty, a right, property, or personal injury resulting from negligent action does not rise to a level which is protected by the Fourteenth Amendment:

> To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialalize the centuries old principle of due process of law.

106 S.Ct. at 665.

The Court, at 106 S.Ct. 666, made it clear that only those rights which are traditionally derived from an uncluttered and pristine reading of the Constitution, its Bill of Rights and Amendments will trigger Fourteenth Amendment protection:

> Our Constitution deals with the large concerns of the governors and the governed, but its does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society. We have previously rejected reasoning that "would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States," *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405

(1976), quoted in *Parratt v. Taylor*, 451 U.S., at 544, 101 S.Ct., at 1947.

The Court in *Daniels* concluded that the actions of the defendants of leaving a towel on a floor did not rise to the level of conduct which implicates the Due Process Clause of the Fourteenth Amendment.

> Where a government official's act causing injury to life, liberty or property is merely negligent "no procedure for compensation is constitutionally required." *Parratt*, 451 U.S. at 548, 101 S.Ct. at 1919 (POWELL, J., concurring in result) (footnote omitted).

106 S.Ct. at 666.

The Court emphasized its narrow interpretation of those subject matters which legitimately can claim ancestry in the Constitution:

> That injuries inflicted by governmental negligence are not addressed by the United States Constitution is not to say that they may not raise significant legal concerns and lead to the creation of protectable legal interests. The enactment of tort claim statutes, for example, reflect the view that injuries caused by such negligence should generally be redressed. It is no reflection on either the breadth of the United States Constitution or the importance of traditional tort law to say that they do not address the same concerns. (footnotes omitted).

106 S.Ct. at 666.

In *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), another prison case, the plaintiff, an inmate, filed a § 1983 action against prison administrators alleging that they had abridged his right not to be subjected to cruel and unusual punishment as proscribed by the Eighth Amendment, and his right not to be deprived of personal security without due process of law as protected by the Fourteenth Amendment. Factually, the plaintiff asserted that he had sent a written message to a prison administrator informing the administrator that he had been physically threatened by a fellow inmate and that he feared assault from the inmate whose name was specified. Prison administrators basically ignored the message.

The plaintiff was soon thereafter assaulted by the specified inmate by use of a fork, resulting in wounds to plaintiff's face, neck, head and body, and a broken nose. While citing its decision in *Daniels, supra,* the Court again held that the defendants' inattention to the written message did not rise beyond a level of conduct which could be described as negligent. The Court held that even though serious injury resulted from defendants' conduct, the plaintiff was not protected by the Due Process Clause of the Fourteenth Amendment. *Davidson,* 106 S.Ct. at 670.

The plaintiff in *Davidson* attempted to distinguish and isolate the substantive claim (not to be deprived of personal security) from the procedural claim by arguing that his claim was "purely procedural," thus circumventing the requirement that plaintiff must show conduct beyond negligence. The Court reaffirmed that such an argument must fail because the procedural aspect of the Fourteenth Amendment is only triggered if any underlying substantive right is at issue:

> In an effort to limit the potentially broad sweep of his claim, petitioner emphasizes that he "does not ask this Court to read the Constitution as an absolute guarantor of his liberty from assault by a fellow prisoner, even if that assault is caused by the negligence of his jailers." Brief for Petitioner 17. Describing his claim as one of "procedural due process, pure and simple," Id., at 14, all he asks is that New Jersey provide him a remedy. But the Fourteenth Amendment does not require a remedy when there has been no "deprivation" of a protected interest.

*Davidson,* 106 S.Ct. at 670. The Court in *Davidson* concluded that the complaint failed because "the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials." *Davidson,* 106 S.Ct. at 671.

Most recently, at least one judge of our Court of Appeals has summarized: "Negligence is not itself actionable. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)." *Kirchoff v. Flynn,* 786 F.2d 320 (7th Cir.1986). *See also Bodine v. Elkhart County Election Board,* 788 F.2d 1270, 1272 (7th Cir.1986).

There is simply no basis for any relief stated here and the defendants are entitled to judgment as a matter of law. Judgment shall so enter. SO ORDERED.