Kenneth MERRITT, Plaintiff,

v.

G. Michael BROGLIN, Defendant.

Civ. No. S 84–452.

United States District Court,
N.D. Indiana,
South Bend Division.

July 25, 1988.

. Kathy Butler O'Neall, Remington, Ind., for plaintiff.

Kirk Knoll, Indianapolis, Ind., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This case well illustrates the practical and procedural difficulties that a district court often encounters in giving living reality to the values that are reflected in *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). On receipt of the mandate of the Court of Appeals in *Merritt v. Broglin,* 841 F.2d 184 (7th Cir. 1988), this court appointed Kathy Butler O'Neall as counsel for the plaintiff. Her professional performance on his behalf has been highly competent. Pursuant to that mandate, this court also held an evidentiary hearing at the Westville Correctional Center (W.C.C.) in Westville, Indiana on May 27, 1988. The facts that emerged from the hearing, along with the undisputed facts that in this record are the basis for this court's decision. The court did entertain post-hearing briefs, the same have been filed and are here considered.

It is necessary for this court to engage in a careful procedural and factual walk-through of the record in this case. The complaint in this case was originally filed on July 26, 1984, in which the plaintiff, Kenneth Merritt, sought relief under the Eighth and Fourteenth Amendments of the Constitution of the United States, and invoked this court's jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). The following pretrial procedures in this court and in compliance with the mandates of *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir. 1982), on August 6, 1987, this court found that there was no basis for a constitutional violation evidenced in the record and granted summary judgment.

The basic claim made by this *pro se* plaintiff was simple and straightforward. As an inmate at the W.C.C., he desired to take advantage of Rule 5 of the Indiana Department of Corrections, temporary leave for inmates (210 IAC 1–5–1), which states the following:

**Rule 5. Temporary Leaves for Inmates**

**210 IAC 1–5–1 Temporary leaves; purpose and conditions**

Sec. 1(1) As per House Enrolled Act 1189, which became Public Law 103 [Codified as IC 11–7–9–10.5. Repealed by P.L. 120–1979, SECTION 22. See, IC 11–10–9–2 concerning temporary releases.] on July 1, 1973, inmates incarcerated in Indiana Department of Correction Facilities may be granted temporary leave for the purposes of:

(a) to visit a spouse, child (including a stepchild or adopted child), parent (including a stepparent or foster parent), grandparent (including stepgrandparent) or brother or sister who is seriously ill or to attend the funeral of any such person; or

(b) to obtain medical, psychiatric or psychological services when adequate services are not otherwise available; or

(c) to make contacts for employment; or

(d) to secure a residence upon release on parole or discharge; or

(e) to visit such person's family; or

(f) to appear before various educational panels, study groups, educational units, and other groups whose purpose is obtaining an understanding of the results, causes and prevention of crime and criminality, including appearances on television and radio programs; provided, that such appearances shall be subject to the specific approval of the warden, or the superintendent of the institution, or the work release director, all under the direction of the commissioner.

The following are the conditions under which inmates may temporarily leave a facility of the Department of Correction:

(2) Temporary leaves shall be approved by the Chief Administrative Officer of the place of confinement or such person or committee as he shall designate.

(3) Any inmate being granted leave shall be subject to security requirements of each particular institution for each inmate.

(4) In determining the eligibility for temporary leave the Chief Administrative Officer of the place of confinement of any inmate applying for such temporary leave shall consider, but not be limited to, the following:

(a) the individual's instant crime;

(b) criminal history involving the death or personal injury of the victim;

(c) history of escapes from lawful confinement;

(d) history of illegal sexual acts;

(e) poor institutional conduct.

(5) Temporary leave may be granted only for prescribed areas within the boundaries of the State of Indiana. Any inmate shall remain within the geographical limit designated for his or her individual leave.

(6) The length of any temporary leave authorized shall be for the minimum time necessary to accomplish the specific purpose for which the leave is authorized, provided that no leave shall exceed three (3) days (Seventy-two 72 hours).

(7) Inmates shall not be eligible to receive more than two temporary leaves in any six months period except;

(a) for leaves under Rule 1a and 1b [subsections (1)(a) and (1)(b) of this section];

(1) "Seriously ill" as stated in Rule 1a [subsection (1)(a) of this section] is defined as terminal illness or critical illness as verified by a licensed physician;

(b) inmates approved for work release assignment to make contact for employment;

(c) leaves under Rule 1c, 1d, and 1e [subsections (1)(c)–(1)(e) of this section] within 60 days of inmate's eligible release date.

(1) "Eligible Release Date" is defined as discharge date or parole release date as set by the Parole Board.

(8) Leaves under Rule 1c, 1d, and 1e [subsections (1)(c)–(1)(e) of this section] shall be granted only within 60 days of the inmate's eligible release date; provided, however, that an inmate approved for work release assignments may be granted a leave to make contacts for employment.

(9) Temporary leave to obtain medical, psychiatric or psychological services when adequate services are not otherwise available will be granted only after the institutional Medical Director, Psychologist or Consulting Psychiatrist confirms in writing that the leave is essential.

(10) After considering the special request of each individual inmate applying for temporary leave, the Chief Administrative Officer of the place of confinement may require:

(a) any inmate to be escorted by a Department of Correction employee for any

part of or duration of the temporary leave;

(b) that the inmate shall comply with any extra security precaution determined by and within the discretion of said Chief Administrative Officer;

(c) any applying inmate to have an approved member of the inmate's family or other person as an escort.

(11) The Chief Administrative Officer of the place of confinement may authorize an inmate to have a temporary leave without an escort.

(12) All inmates on temporary leave are subject to all State and Federal laws.

(13) The violation of any law or any part of the policy governing temporary leave by any inmate on temporary leave shall subject that inmate to:

(a) penalties attached to any such law violation;

(b) forfeiture of the privilege for participation in the Temporary Leave Program;

(c) any further restrictions or change in classification warranted.

(14) Inmates shall accept the responsibility for returning to their place of confinement within the specified time limits of their individual leaves.

(15) The use, possession, or securing of alcoholic beverages, or any other drug or intoxicant by inmates on temporary leave is strictly forbidden except as prescribed by a licensed physician.

(16) Inmates on temporary leave shall not operate any motor vehicle.

(17) Inmates on temporary leave shall use public transportation or such transportation as is approved by the Chief Administrative Officer of the place of confinement. Such approved transportation shall be in the form of auto or truck.

(18) Should advice or assistance be needed while on temporary leave the inmate shall call his or her place of confinement or center, the local parole officer, the Department of Correction, the local sheriff or police department.

(19) Should any inmate be involved in an accident or other situations which might prevent his or her return from leave within the specific time limits, that inmate or other persons shall immediately or as soon as possible call his or her place of confinement or Center or the Department of Correction and then turn himself over to the local parole officer or sheriff.

(20) Any inmate on temporary leave shall at all times carry on his or her person identification provided by the place of confinement.

(21) Upon returning to the place of confinement from a temporary leave the inmate shall not be authorized to retain any personal property which he did not possess prior to going on the temporary leave. (Department of Correction; Temporary Leaves Rule 1–21; filed May 22, 1974, 8:40 am; Rules and Regs. 1975, p. 229)

The W.C.C. also had a directive on the subject entitled the Westville Regulation Classification and Clinical Services 7–00 Emergency Temporary Relief, a copy of which is attached hereto and incorporated herein as Appendix "A". The issue in this case was whether the plaintiff was constitutionally entitled to attend the funeral of his former stepfather who, at the time of his death was divorced from the plaintiff's mother. The defendant in this case, the Superintendent of the W.C.C., denied said relief. This court citing *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), held that there was no basis to show that any constitutional right of the plaintiff with reference to attendance at his former stepfather's funeral had been violated. This court also cited *McChristion v. Duckworth*, 610 F.Supp. 791 (N.D.Ind.1985).

On September 17, 1987, the plaintiff filed a ten-page motion for relief from judgment under Rule 60(b)(6) of the Federal Rules of Civil Procedure. The motion was supported by extensive citations of authority and was quite lawyerlike in its presentation, even though this court was not finally persuaded by it. On October 2, 1987, this court denied the aforesaid motion for relief

from judgment citing *Coleman v. Smith*, 814 F.2d 1142 (7th Cir.1987); *Bieganek v. Taylor*, 801 F.2d 879 (7th Cir.1986); *Margoles v. Johns*, 798 F.2d 1069 (7th Cir.1986); and *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601 (7th Cir.1986).

The next official act apparent in this record is the plaintiff's notice of appeal filing on November 17, 1987. Thereafter, on November 24, 1987, the Court of Appeals for this circuit entered an order regarding Rule 4(a) of the Federal Rules of Appellate Procedure (Fed.R.App.P.). See Appendix "B". A copy of the November 24, 1987, order was not forwarded to the Clerk of this court. Thereafter, sometime in 1988 at a time precisely uncertain, the plaintiff filed a motion for extension of time to file a notice of appeal and his memorandum thereon, with the Clerk of this court. On December 11, 1987, the Court of Appeals entered its order regarding the filing of a status report by the plaintiff on or before December 29, 1987. On December 29, 1987, the Clerk's office of this court returned the plaintiff's motion for extension of time and memorandum without a file mark, with an undated letter telling the plaintiff to direct all of his further correspondence with the Clerk of the Court of Appeals for the Seventh Circuit, due to the fact that the record in this case had been forwarded to the Court of Appeals pursuant to an appeal. That letter is incorporated herein and marked Appendix "C". It is beyond any dispute that the notice of appeal filed on November 17, 1987 was twelve days late. A careful focus must be made on the evidence relating to the 30–day period of time which commenced to run on October 6, 1987, and therefore terminated on November 5, 1987, to determine if it provides any basis for this plaintiff to show a non-compliance with the relevant procedural rule.

Rule 4(a)(5), Fed.R.App.P. provides as follows:

**Appeals in Civil Cases**

(1) In a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 shall be filed with the clerk of the district court wihin 30 days after the date of entry of the judgment or order appealed from; but if the United States or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days after such entry. If a notice of appeal is mistakenly filed in the court of appeals, the clerk of the court of appeals shall note thereon the date on which it was received and transmit it to the clerk of the district court and it shall be deemed filed in the district court on the date so noted.

(2) Except as provided in (a)(4) of this Rule 4, a notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after such entry and on the day thereof.

(3) If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period last expires.

(4) If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party: (i) for judgment under Rule 50(b); (ii) under Rule 52(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (iii) under Rule 59 to alter or amend the judgment; or (iv) under Rule 59 for a new trial, the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion. A notice of appeal filed before the disposition of any of the above motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above. No additional fees shall be required for such filing.

(5) The district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time

prescribed by this Rule 4(a). Any such motion which is filed before expiration of the prescribed time may be ex parte unless the court otherwise requires. Notice of any such motion which is filed after expiration of the prescribed time shall be given to the other parties in accordance with local rules. No such extension shall exceed 30 days past such prescribed time or 10 days from the date of entry of the order granting the motion, whichever occurs later.

(6) A judgment or order is entered within the meaning of this Rule 4(a) when it is entered in compliance with Rules 58 and 79(a) of the Federal Rules of Civil Procedure.

Pursuant to Rule 4(a)(5), Fed.R.App.P., a district court upon the showing of excusable neglect or good cause may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by Rule 4(a). Thus, the plaintiff had until December 5, 1987, in which to file his motion for an extension of time.

At this point, the evidence is unclear, both that presented by the plaintiff and the testimony of Norma Trowbridge, the Secretary to the Clerk of this court. The plaintiff is uncertain as to when he mailed the aforesaid request and Ms. Trowbridge cannot pinpoint the time at which it was received and returned, except that the return was sent out on approximately December 29, 1987, in an undated cover letter. The testimony was also to the effect that she was certain that Merritt's motion had come in before December 18, 1987. Because of the total circumstances in this case in which the mechanical paper handling has been less than ideal in more than one instance, the vagueness with regard to the filing date must be resolved in favor of the plaintiff. One of the critical orders issued by the Court of Appeals was its order of November 24, 1987, which was not made available to the Clerk's office of this court. It is also correct to indicate that a far safer procedure would have been for the Clerk's office to have marked "received" the relevant filings of the plaintiff. It is also beyond any dispute that Ms. Trowbridge acted without consultation with any Judge of this court before returning these papers to the plaintiff.

Since the mandate was issued in this case, the Supreme Court of the United States in *Houston v. Lack,* —— U.S. ——, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), with reference to this rule in a slightly different but not totally dissimilar context. There, the Supreme Court recognized that the situation of prisoners in regard to the process of mailing their legal papers are forced to deposit them with prison authorities who may delay mailing. So that the general rule that a notice of appeal is "filed" when it is received by the district court should not apply in such instances. Certainly, one reads between those lines the underlying values of *Bounds v. Smith, supra.* But compare, *United States v. Estevez,* 852 F.2d 239 (7th Cir.1988). At an earlier time, in a slightly different procedural context, a similar amount of leniency was demonstrated in regard to the time mandates for the filing by a *pro se* plaintiff (not this plaintiff) in *Merritt v. Faulkner,* 697 F.2d 761 (7th Cir.1983), with reference to the filing of a jury demand under Rule 38(b), Fed.R. Civ.P.

The strongest argument made by the defendant has to do with the belated filing of the notice of appeal on November 17, 1987. A careful examination of the evidence presented indicates that most of the extenuating circumstances upon which the plaintiff now relies occurred *after* and not before November 5, 1987. This included a lockdown at the institution where the plaintiff was then being held. This court is candidly tempted to base its decision on the failure of the plaintiff to show any excusable neglect for filing the belated notice of appeal. However, given the totality of this record and the possibility that a member of the Clerk's staff of this court acted in an unintended disregard of a procedural right of the plaintiff, the record tilts ever so slightly in favor of permitting the technical noncompliance with this rule. Measures have been taken by this court and its Clerk to insure that there will be no repeat of this unintentional mishandling of the mass

of *pro se* papers presented to the Clerk for filing hereafter.

Considering the underlying interest of permitting the plaintiff to present whatever challenge he may have to the legal sufficiency of this court's earlier decision with reference to his claims, the court now finds that there was the requisite minimal excusable neglect and good cause for the plaintiff's failure to file his notice of appeal in a timely fashion. For that reason, the time for filing his notice of appeal is EXTENDED, so that he can pursue his appeal before the Court of Appeals for this circuit. The Clerk of the Court shall forthwith transmit a copy hereof to the Clerk, U.S. Court of Appeals for the Seventh Circuit. IT IS SO ORDERED.

## APPENDIX A

## WESTVILLE CORRECTIONAL CENTER

## DIRECTIVE

CLASSIFICATION AND CLINICAL SERVICES–7–00

*Offender Emergency Temporary Leave (Death in Family)*

7–13

a. *PURPOSE*

To establish a procedure that defines staff responsibilities relating to notification of emergency (death in the family) telephone messages from families of offenders on weekends, holidays, and between 4:30 p.m. and 8:00 a.m. on weekdays.

b. *PROCEDURE*

1. The switchboard operator, in receiving telephone calls from relatives, will ascertain if the call relates to the death of an immediate family member.

a. If so, the switchboard operator will obtain the following information from the caller:

(1) Name and number of the offender.

(2) Name and telephone number and relationship of the caller.

(3) Name of deceased and relationship.

(4) Date, time, and place of funeral if arrangements have been completed.

(5) Name of funeral home deceased has been taken.

b. The switchboard operator will relate this information to the shift supervisor of the complex where the offender resides.

(1) The shift supervisor or designee will inform the offender of the death.

(2) If more information is needed, the counselor or the Administrative Coverage staff person shall place a call to the initial caller (section b, # 1, a–2).

2. The offender may request a Temporary Leave to attend the funeral of a member of his/her immediate family.

a. Arrangements for the Temporary Leave will be made by the Counselor in accordance with S.O.P. # 738.

b. If the Temporary Leave must take place on the weekend or holiday, or if arrangements for the Temporary Leave must be made prior to the Counselor's next working shift, the staff person having administrative coverage will be contacted.

c. The person on Administrative Coverage will do the following:

(1) Check the offender's institutional packet to verify relationship of immediate family member.

(Immediate family consists of spouse, parents, children, brothers, sisters, grandparents, grandchildren, or the spouse of any of these persons.)

(2) Confirm the death, date, time, and place of the funeral by contacting the funeral home.

(3) Complete the Temporary Leave forms # 7797 and # 8522.

(4) The Administrative Coverage staff person shall be responsible for screening Temporary Leaves for special security instructions.

(5) Approve or deny the Temporary Leave.

a.) If denied, permit the offender to telephone his family to notify them of the denial.

b.) If approved, contact Perimeter Security for offender clothing, travel and escort arrangements. Complete and sign gate pass (State form # 35497).

3. A folder containing copies of S.O.P. # 738, gate passes, and Temporary Leave application forms will be kept at the Switchboard Office for use by the person on Administrative Coverage.

4. The Switchboard operators shall be authorized to release the Records Storage room key to the Administrative Coverage staff person *only*.

This directive is effective immediately and will remain in effect until otherwise notified by the Superintendent or his designee.

/s/ G. Michael Broglin
Superintendent
November, 1982

## APPENDIX B

United States Court of Appeals

For the Seventh Circuit

No. 87–2884.

November 24, 1987.

By the Court:

Kenneth Merritt, Plaintiff–Appellant,

v.

G. Michael Broglin, Superintendent, Defendant–Appellee.

Appeal from the United States District Court for the Northern District of Indiana, South Bend Division, No. 84–C–452; Hon. Allen Sharp, Judge.

### ORDER

Rule 4(a) of the Federal Rules of Appellate Procedure requires that a notice of appeal in a civil case be filed in the district court within 30 days of the entry of the judgment appealed. In this case judgment was entered on October 6, 1987, and the notice of appeal was filed on November 17, 1987, 12 days late. The district court has not granted an extension of the appeal period, see Rule 4(a)(5), and this court is not empowered to do so, see Fed.R.App.P. 26(b). Accordingly,

IT IS ORDERED that appellant, on or before December 8, 1987, file a brief memorandum stating why this appeal should not be dismissed for lack of jurisdiction. A motion for voluntary dismissal pursuant to Fed.R.App.P. 42(b) will satisfy this requirement. Briefing shall be held in abeyance pending further court order.

If appellant wishes to request an extension of time in which to file the notice of appeal, he should file an appropriate motion in the district court, not this court, as soon as possible. Appellant's jurisdictional memorandum should include a discussion of the status of any such motion.

### APPENDIX C

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF INDIANA

RICHARD E. TIMMONS     102 FEDERAL BUILDING
CLERK OF THE COURT     SOUTH BEND, INDIANA
46601

Mr. Kenneth Merritt
# 24297
Post Office Box 30
Pendleton, Indiana 46064

Dear Mr. Merritt:

Your case is now in the Court of Appeals. All motions must be directed to their attention.

Yours very truly,

(s) Richard E. Timmons

Richard E. Timmons
Clerk of Court

Enclosure