**David WERRY, Plaintiff,**

v.

**Edward E. HORTON, individually and as a police officer of the City of Pittsburgh; William H. Freiss, individually and as a police officer of the City of Pittsburgh; Albert W. Parente, individually and as a police officer of the City of Pittsburgh; John Buch, individually and as a police officer of the City of Pittsburgh; Joseph Wind, individually and as a police officer of the City of Pittsburgh; R. Lawrence Morgan, individually and as a police officer of the City of Pittsburgh; William Kaufman, individually and as a police officer of the City of Pittsburgh; Robert J. Coll, Jr., individually and as a police officer of the City of Pittsburgh; Robert J. Coll, Jr., individually and as the Superintendent of the Police Department of the City of Pittsburgh; Richard S. Caliguiri, individually and as the Mayor of the City of Pittsburgh; and the City of Pittsburgh, a municipal corporation, Defendants.**

Civ. A. No. 84–2770.

United States District Court,
W.D. Pennsylvania.

Aug. 6, 1987.

William F. Goodrich, William B. Dixon, Pittsburgh, Pa., for plaintiff.

Bryan Campbell, Robert B. Smith, Asst. City Sol., Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

ZIEGLER, District Judge.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and § 1988 and the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. Jurisdiction is based upon the aforementioned provision, 28 U.S.C. § 1331 and § 1343(1), (3) and (4). Plaintiff also invokes the pendent jurisdiction of this court to adjudicate the claims arising under state law. All defendants have filed motions for summary judgment. Plaintiff has filed a motion for summary judgment against the Municipal Defendants: Robert J. Coll (Coll), Richard S. Caliguiri (Caliguiri) and the City of Pittsburgh (City).

### History of the Case

Defendants, William H. Freiss (Freiss) and Edward E. Horton (Horton), are police officers employed by defendant, City of Pittsburgh. On November 16, 1983, Freiss and Horton were assigned to plain clothes duty in the No. 3 Police Station. Freiss and Horton were given a description of a suspect in a series of armed robberies in the area and patrolled the area in the unmarked, personal vehicle of Freiss.

At approximately 6:35 p.m., Freiss and Horton received a radio broadcast that a convenience store had been robbed and described the suspect as a male with a dark ski mask and burgandy ski-type jacket of thin material. Complaint at para. 25. There is a dispute regarding whether addi-

tional reports were audible over the walky-talky type radio in Freiss' car.

Freiss and Horton saw plaintiff in the vicinity of the reported crime. He was walking down the street, wearing a maroon baseball jacket. Freiss, the driver of the car, pulled up alongside plaintiff and Horton, clad in an army jacket, stated that he was a detective and that he wanted to question him. Complaint at para. 29. Plaintiff continued to walk and the officers got out of the vehicle, ordering plaintiff to stop. Plaintiff did not stop. He alleges that the officers displayed no identification to indicate to him that they were police officers. Complaint at para. 34. Defendants deny this allegation. Answer at para. 34.

The events that took place upon plaintiff's refusal to stop are material facts which are hotly disputed by the officers and Werry. Plaintiff claims that when he refused to stop, Horton pointed his .38 caliber service revolver at him. Complaint at para. 31. After a brief verbal exchange, Werry contends that he ran away in fear, heard someone yell, "Freeze," and then Horton willfully aimed and fired his weapon, striking plaintiff's left buttock. Complaint at para. 32. After taking a few steps, plaintiff collapsed in the street. Werry alleges that Freiss then kneeled on him with his revolver drawn and proceeded to choke him. Complaint at para. 35.

The officers' perception of what led to the shooting is dramatically different. They contend that as plaintiff fled, he suddenly turned to face them, uttering obscenities at them. Believing that he was in danger, Horton fired. Answer at para. 33. Freiss went over to Werry when he collapsed in the street and allegedly used only the amount of force he believed was reasonably necessary to make certain that plaintiff would not attempt to escape. Answer at para. 35.

As a result of the shooting, plaintiff suffered injuries which required surgery several times over the eight months following the shooting. He sustained permanent damage to his urethra, rectum and pelvis. Complaint at para. 38. Claims for damages include medical expenses of $50,326.01 and lost wages of $3,712.00. Plaintiff's Narrative Pre-Trial Statement.

Plaintiff was never charged with a robbery and he alleges that there was no probable cause to believe that he had committed the reported robberies. Complaint at para. 39. Horton and Freiss contend that they had probable cause to believe that plaintiff committed one of the robberies because he fit the general description, attempted to flee when requested to stop and made threatening remarks. Answer at para. 39. Plaintiff was unarmed, but the officers claim that plaintiff made threatening movements. Answer at para. 40.

Following the shooting, Horton and Freiss filed charges against plaintiff, alleging that he made terroristic threats. Plaintiff contends that the filing of these charges was a ploy on the part of Horton and Freiss to exonerate themselves of any civil or criminal liability or internal discipline. Complaint at paras. 41–42. Horton and Freiss deny these allegations and contend that they had a basis for filing the complaint that plaintiff had made terroristic threats. Answer at paras. 41–44. Defendant Coll, Superintendent of the Police Department at the time of the shooting, withdrew the officers' charges against Werry because he found that they were not substantiated by the facts of the case. Complaint at para. 44; Answer at para. 44; Coll at para. 27.

Officer Parente, also a defendant, interviewed plaintiff in the Emergency Room of the treating hospital following the shooting incident. There, plaintiff alleges that Parente made a report containing false and inaccurate statements in order to assist his fellow officers, Horton and Freiss, by corroborating the fabricated account of the shooting that the two officers had given him. Complaint at para. 46. Horton, Freiss and Parente allege that the report was true and accurate. Answer at para. 46.

Superintendent Coll filed an internal disciplinary action charging Horton with violating department rules and regulations concerning the discharge of a firearm and

the use of force to effectuate an arrest. Complaint at para. 48. A Police Trial Board, made up of three police officers, defendants Wind, Morgan and Kaufman, met on June 1, 1984. Complaint at paras. 49–52. An attorney employed by the City of Pittsburgh, also a defendant, prosecuted Horton before the Board. Complaint at para. 51. Horton was exonerated of the charges by the Trial Board. Coll at 22. Superintendent Coll disapproved of the Trial Board's findings and upon the recommendation of disapproval by Coll, Mayor Caliguiri also disapproved the Trial Board's exoneration of Horton. Coll at 22; Caliguiri at 8. Neither the mayor nor Coll ordered the Trial Board to reconvene for a second hearing on the Horton case. Coll at 23.

### Defendants Horton and Freiss

Defendants Horton and Freiss have moved for summary judgment. The dispute among the parties regarding the series of events that took place on November 16, 1983 preclude disposition of this case by summary judgment with regard to the involvement of Freiss and Horton for the following reasons. In order to state a claim under § 1983, "[f]irst the plaintiff must prove that the defendant has deprived him of a right secured by the Constitution and laws of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right under color of statue, ordinance, regulation, custom or usage of any State or Territory." *Adickes vs. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). There is no dispute over whether Horton and Freiss acted under color of law; the only issue is whether defendants deprived Werry of some right secured by law.

■ There is a genuine issue of fact concerning whether the police officers had probable cause to arrest plaintiff. "Clearly, an arrest without probable cause is a constitutional violation actionable under § 1983 ... [T]he question of probable cause in a § 1983 damage suit is one for the jury." *Patzig v. O'Neill*, 577 F.2d 841, 848 (3d Cir.1978). There is also a dispute among the parties regarding whether plain-

tiff imposed a threat to the officers. "[D]eadly force may not be used unless it is necessary to prevent the escape and the officer had probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Gardner*, 471 U.S. 1, 3, 105 S.Ct. 1694, 1697, 85 L.Ed.2d 1 (1984).

The officers contend that plaintiff turned toward them and made threatening remarks and gestures but plaintiff denies this allegation. We note that the officers' version of what occurred immediately prior to the shooting is arguably inconsistent with the medical records which establish that plaintiff was shot from behind with the bullet penetrating his left buttock and lodging in the groin. Defendant's Brief at 3; Complaint at paras. 32–33; Answer at paras. 31–33. In ruling on a motion for summary judgment, all inferences to be drawn from the evidence presented must be viewed in the light most favorable to the non-movant. *Baker v. Lukens Steel Co.*, 793 F.2d 509, 511 (3d Cir.1986).

For the foregoing reasons, we hold that there are genuine issues of material fact remaining for trial and the motion of Horton and Freiss for summary judgment must therefore be denied.

### Defendant Parente

■ Officer Parente has also moved for summary judgment. He argues that plaintiff could not recall what he said during the interview with Parente at the hospital following the shooting and thus plaintiff has no support for his claim that Parente made false and inaccurate statements. Parente emphasizes that when pressed to state whether he was unable to recall whether Horton and Freiss displayed identification, plaintiff was ordered by his counsel not to answer. We find that the conflicting testimony of Werry and Parente present genuine issues for trial.

Parente claims that he was ordered to ride in the ambulance and to find out what had happened to Werry. Parente at 81. He was asked at the Trial Board hearing whether "Lieutenant Buch never ordered

you to interview David Werry at the hospital?" Parente answered in the negative, which conflicted with his subsequent testimony during deposition. Parente at 82. Parente noted that homicide takes reports of shooting incidents and he had no idea why he was given the responsibility of interviewing Werry. Parente at 71. A jury could infer that Perente was not ordered to interview Werry but took it upon himself to do so in order to write a report which would exonerate his fellow officers from any charges of wrongdoing.

The notes taken by Parente were destroyed by him after he prepared the report. Parente at 23. After the interview, Parente returned to the police station where Horton and Freiss indicated to him that they were going to file some type of charges against Werry, according to Parente's testimony early during the deposition. Parente at 20. Later during the deposition, however, Parente stated that Horton and Freiss "never said they were going to file charges," that he had simply assumed that they would. Parente at 55. The reason Parente would make such an assumption under the facts of the case as he knew them to be at that time may raise a question in jurors' minds whether there was a policy to charge victims of excessive force with making terroristic threats, as plaintiff alleges.

After giving Horton and Freiss his copy of the Pennsylvania Crimes Code, Parente called the legal advisor for the police. Parente at 55. This conduct on the part of Parente may be construed as conspiratorial behavior by a jury.

Assuming, as we must for the purposes of summary judgment, that the non-movant's allegations are true and giving the non-movant the benefit of all inferences, we shall deny Parente's motion for summary judgment.

### Defendants Wind, Morgan and Kaufman

Defendants Wind, Morgan and Kaufman (Trial Board defendants) have filed a motion for summary judgment, arguing that plaintiff had no protected rights or interests in the Trial Board proceeding and that even if he had, he was not deprived of any right by the outcome of the Trial Board proceeding. Plaintiff argues that Trial Board defendants deprived him of rights of due process, equal protection and the right to be free from malicious prosecution. We find no genuine issue of material fact regarding the conduct of the Trial Board.

No activity undertaken by the individual members of the Trial Board deprived plaintiff of any rights or contributed to the deprivation of any right when Horton was brought before the Trial Board.

■ Assuming arguendo that plaintiff was somehow deprived of a right by the Trial Board, the deprivation does not give rise to a § 1983 claim. "[N]othing in [the Fourteenth Amendment] protects against all deprivations of life, liberty, or property by the State. [It] protects only against deprivations without due process of law." *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981). Plaintiff was given an opportunity to be heard by the Trial Board. Thus even if Trial Board defendants deprived him of some right, the deprivation was not without due process.

The record is devoid of any evidence presented by the parties that presents a genuine issue of fact. There are no factual allegations that suggest that the Trial Board defendants engaged in any conduct which deprived plaintiff of any rights without due process. "In opposing the motion [for summary judgment, plaintiff's] response must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." *Bencivenga v. Western Pennsylvania Teamsters*, 763 F.2d 574, 576 (3d Cir.1985). Plaintiff has failed to sustain his burden. Accordingly, we shall enter summary judgment in favor of Wind, Morgan and Kaufman.

### Defendants Coll, Caliguiri and City of Pittsburgh

Defendants Coll, Caliguiri and the City of Pittsburgh have moved for summary

judgment. Plaintiff alleges that these defendants (Municipal defendants) instituted de facto policies wherein police officers use excessive force, are improperly trained, supervised, equipped and disciplined, maliciously prosecute victims of excessive force to create the appearance of justification for the unlawful force used by police officers and cover up police misconduct with a sham proceeding before a board made up of fellow officers. Complaint at paras. 53–64. Plaintiff further alleges that the policies, acts and omissions of the Municipal defendants have deprived him of rights, privileges and immunities.

"[W]hile supervising public officials may not in any way authorize, encourage, or approve constitutional torts, they have no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir.1986). Thus, in order to hold the Municipal defendants liable under § 1983, plaintiff is "required to establish either (1) the existence of an officially promulgated authority, or (2) that the practices of city officials causing the alleged deprivation were so permanent and well-settled as to have the force of law." *Anela v. City of Wildwood*, 790 F.2d 1063, 1066 (3d Cir.1986).

■ Coll and Caliguiri admit that they are policy makers for the City of Pittsburgh under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, they argue that plaintiff has failed to establish that a policy does in fact exist. We agree. Plaintiff's complaint sets forth no factual allegations to support the claim that a de facto policy exists. Paragraphs 53 through 64 are mere conclusions wholly lacking in factual support. As such, plaintiff's allegations cannot survive the motion of the Municipal defendants for summary judgment.

We note that even if plaintiff had established the existence of a policy or custom, the complaint could not withstand the Municipal defendant's motion for summary judgment, for "[o]nly if there is a plausible nexus between the policy or established state procedure and the infringement of constitutional rights can a § 1983 action be maintained." *Estate of Bailey v. County of York*, 768 F.2d 503, 507 (3d Cir.1985).

Plaintiff argues that Coll and Caliguiri should have ordered the Trial Board to reconvene and hear the charges against Horton again. Even if we find that Coll and Caliguiri should have ordered a reconvening of the Trial Board, however, their failure to do so was mere negligence. Mere negligence will not suffice to sustain a § 1983 claim. "The guarantee of due process has never been understood to mean that the State must guarantee due care on the part of its officials." *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). Mere lack of due care by a state official may not deprive an individual of life, liberty or property under the 14th Amendment. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

We hold that there is no genuine issue of material fact with regard to the allegations involving Coll, Caliguiri and the City of Pittsburgh. We shall enter summary judgment in their favor and accordingly deny the motion of plaintiff for summary judgment against them.

A written order will follow.

### ORDER OF COURT

IT IS ORDERED that the motions of defendants, Joseph Wind, Lawrence Morgan, William Kaufman, Robert J. Coll, Jr., Righard S. Caliguiri and the City of Pittsburgh, for summary judgment be and hereby are granted;

IT IS FURTHER ORDERED that the motions of defendants, Edward E. Horton, William H. Freiss and Albert W. Parente, be and hereby are denied;

IT IS FURTHER ORDERED that the motion of plaintiff, David Werry, for summary judgment against defendants Robert J. Coll, Jr., Richard S. Caliguiri and the City of Pittsburgh be and hereby is denied.