**Vernon CEPHAS, Plaintiff,**

v.

**St. Lt. George TRUITT, Defendant.**

**Civil Action No. 94–182–LON.**

United States District Court,
D. Delaware.

Sept. 30, 1996.

Vernon E. Cephas, Pro Se.

Cathy Ann Jenkins and Susan P. Tussey, of Department of Justice, Wilmington, DE, for Defendants.

## OPINION

LONGOBARDI, District Judge.

### I.

Plaintiff Vernon Cephas brings this prisoner civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendant Staff Lieutenant George Truitt violated his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. [Amended Complaint, Docket Item ("D.I.") 8].[1] Presently before the Court is defendant's motion for summary judgment.

At the time of the events giving rise to this suit, plaintiff was a pretrial detainee incar-

cerated in the Sussex Correctional Institution ("SCI"). On the night of August 8, 1993, plaintiff and two other inmates allegedly were involved in the assault of another inmate, Victor Knowles. Later that evening, plaintiff was placed in administrative segregation, where he remained until a disciplinary hearing was held on August 26, 1993. Defendant, the Hearing Officer at SCI, presided over this hearing. At the hearing, defendant found plaintiff guilty of assaulting Knowles, and imposed a 15 day isolation sanction.

Plaintiff raises two arguments in support of his claim that defendant acted in violation of his due process rights. First, plaintiff contends that the disciplinary hearing did not comport with the requirements of the Due Process Clause. Finally, plaintiff alleges that he was assaulted by another inmate while in administrative segregation awaiting his hearing.

Defendant denies that he violated plaintiff's due process rights, moving for summary judgment on all of plaintiff's claims. Defendant also asserts that he is immune from suit under the Eleventh Amendment, the doctrine of Qualified Immunity, and the doctrine of Sovereign Immunity.

### II.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine only if a reasonable jury could find for the nonmoving party. *Id.*

■ While the moving party has the initial burden to identify evidence that demonstrates the absence of a genuine issue of

---

1. Plaintiff's original complaint was filed on April 7, 1994, and contained both additional claims and additional defendants. Some of these claims and defendants were dismissed by the Court pur-

suant to 28 U.S.C. § 1915(d), [D.I. 1], and some were dismissed voluntarily by plaintiff in his motion to amend the complaint. [D.I. 8].

material fact, once that burden has been met, the nonmoving party must make a sufficient showing to establish the existence of every element necessary to its case and on which it will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.,* 812 F.2d 141, 144 (3d Cir.1987). Credibility determinations are not the function of the judge; rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

### III.

Plaintiff alleges that the disciplinary hearing was conducted in violation of his due process rights. Specifically, plaintiff asserts that defendant refused to allow plaintiff to call witnesses or to present oral or written statements in his defense, that defendant refused to allow plaintiff to inspect the evidence upon which defendant relied in making his decision, and that defendant was prejudiced and not impartial towards plaintiff in conducting the hearing. Plaintiff further contends that the 15 day isolation sentence was arbitrary and disproportionate to the circumstances of the crime and that defendant refused to credit plaintiff for the time spent in administrative segregation prior to the hearing. Plaintiff also asserts that defendant unnecessarily and unjustifiably delayed the hearing until 18 days after the assault.

■ In order for plaintiff to successfully maintain a claim under the Due Process Clause, he must establish that defendant's action infringed upon a protected liberty interest. *See Board of Regents v. Roth,* 408 U.S. 564, 569–72, 92 S.Ct. 2701, 2705–07, 33 L.Ed.2d 548. A constitutionally cognizable liberty interest can arise from either the Due Process Clause itself or the laws of the states. *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 868–69, 74 L.Ed.2d 675 (1983). The United States Supreme Court has held the Due Process Clause itself does not provide prison inmates with a liberty interest in remaining in the general population. *Id.* at 468, 103 S.Ct. at 869–70; *see Sandin v. Conner,* ⸺ U.S. ⸺, ⸺, 115 S.Ct. 2293, 2302, 132 L.Ed.2d 418. Thus, plaintiff must establish either that state law or his status as a pre-trial detainee gives rise to a liberty interest protected by the Due Process Clause.

Relying on *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), plaintiff argues that whenever a prisoner is subjected to a disciplinary hearing, the Due Process Clause is implicated, and the prisoner is entitled the procedural protections enunciated by the Supreme Court in that case. Plaintiff also asserts pursuant to *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), that he acquired a constitutionally cognizable liberty interest from mandatory language used in various prison regulations.[2]

■ In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), a convicted prisoner alleged that the prison disciplinary proceedings which resulted in the forfeiture of his good-time credits did not comply with the Due Process Clause of the Fourteenth Amendment. A state statute entitled a prisoner to earn good-time credits for good behavior, resulting in a reduction of his term of imprisonment. *Id.* at 546, 94 S.Ct. at 2969–70.

2. The SCI Rules of Conduct provides:

Impartial Hearing Officer: You have the right to be heard by an impartial Hearing Officer....

Make Statement and Present Evidence: You have the right to make a statement and present any reasonable evidence, including written statements from others, in your behalf.

Record Of Findings: You have the right to receive a written record of the disciplinary hearing. Such record shall state the findings of the Hearing Officer, summarize the evidence relied upon, and will state the sanction imposed if any.

Pre–Hearing Detention: ... Any time spent in pre-hearing detention will be credited against any sanction imposed.

Call Witness: You have the right to call witnesses on your behalf unless doing so would be irrelevant, redundant or unduly hazardous to institutional safety, or would endanger the physical safety of any individual; such reasons to be stated in writing.

[D.I. 41.]

The Court held that, although the Constitution itself does not create a liberty interest in credit for good behavior, the State created a liberty interest by conferring on prisoners the right to mandatory sentence reductions for good behavior and specifying that good-time credits may only be forfeited for major misconduct. *Id.* at 557, 94 S.Ct. at 2975. The Court held that this liberty interest entitled the prisoner to certain procedural protections: (1) written notice of the charges given no less than 24 hours prior to the hearing to enable the prisoner to "marshal the facts and prepare a defense;" (2) a written statement of the evidence relied on and reasons for the disciplinary action; and (3) the right to call witnesses and present documentary evidence in his defense provided that permitting him to do so would not be unduly hazardous to institutional safety or correctional goals. *Id.* at 564–66, 94 S.Ct. at 2978–80.

In *Sandin v. Conner*, —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the United States Supreme Court reexamined the inquiry that a court must undertake in analyzing due process claims in the prison setting. In *Sandin*, a convicted prisoner physically and verbally resisted a strip search. *Id.* at ——, 115 S.Ct. at 2296. He was charged with "high misconduct" for using physical resistance and "low moderate misconduct" for using abusive language towards prison officials. *Id.* The prisoner was given a hearing before an adjustment committee which sentenced him to 30 days disciplinary segregation in the Special Holding Unit for the high misconduct charge, and four hours segregation for the low moderate misconduct charge. *Id.* The committee refused the prisoner's request to present witnesses at the hearing. *Id.* The prisoner alleged that this hearing amounted to a deprivation of procedural due process. *Id.*

The district court granted summary judgment in favor of the prison officials. *Id.* The Court of Appeals for the Ninth Circuit reversed, utilizing a methodology established in *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). Under the *Hewitt* approach, prison regulations which use mandatory language may give rise to a state-created liberty interest entitling a prisoner to the due process protections set forth in *Wolff*. *Hewitt*, 459 U.S. at 471–472, 103 S.Ct. at 871–72. The Ninth Circuit found that a certain state prison regulation did in fact create a liberty interest, and that there was a disputed question of fact as to whether the prisoner received all the process due under *Wolff*. *Sandin*, at —— – ——, 115 S.Ct. at 2296–97.

The Supreme Court reversed the Ninth Circuit, and in doing so abandoned the *Hewitt* approach:

By shifting the focus of the liberty interest inquiry to one based on the language of a particular regulation, and not the nature of the deprivation, the [*Hewitt* approach] encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges. . . .

.     .     .     .     .

Hewitt has produced at least two undesirable effects. First, it creates disincentives for States to codify prison management procedures in the interest of uniform treatment. . . .

Second, the Hewitt approach has led to the involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone. In doing so, it has run counter to the view expressed in several of our cases that federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment.

*Id.* at ——, 115 S.Ct. at 2299.

The Supreme Court then called for a return to established due process principles:

Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due

Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* at ——, 115 S.Ct. at 2300 (citations omitted).

The Court concluded that a prisoner's confinement in disciplinary segregation for 30 days did not present the type of atypical, significant deprivation required to create a liberty interest. *Id.* at ——, 115 S.Ct. at 2301. The Court based this conclusion upon three findings: (1) that disciplinary segregation was virtually identical to conditions endured by prisoners in administrative segregation and protective custody; (2) that even inmates in the general population were "locked down" for significant periods of time each day; and (3) the State's action would not inevitably affect the duration of his sentence. *Id.* Thus, *Sandin* refutes both plaintiff's contention that all prisoner disciplinary proceedings conducted without the *Wolff* procedural protections infringe upon a protected liberty interest, and his contention that he acquired a protected liberty interest from mandatory language used in various prison regulations.

Moreover, this Court is convinced that the imposition of a 15 day isolation sanction does not constitute the type of atypical, significant deprivation required to create a cognizable liberty interest under *Sandin.* The length of plaintiff's confinement in administrative segregation and isolation, 18 and 15 days respectively, is analogous to the 30 day period of confinement found to be below the constitutional threshold in *Sandin.* Additionally, there is no evidence in the record to indicate that plaintiff's confinement in isolation was any more severe than his confinement in administrative segregation. Likewise, there is no evidence to indicate that the imposition of this sanction would affect the length of the sentence ultimately imposed on plaintiff. Thus, the disciplinary sanction imposed on plaintiff does not give rise to a state created liberty interest cognizable under the Due Process Clause.

■ Normally, that would be the end of the inquiry. However, plaintiff's status as a pretrial detainee gives rise to a constitutionally cognizable liberty interest in addition to those protections provided to convicted prisoners. In *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the United States Supreme Court articulated the constitutional framework for evaluating the due process claims of pretrial detainees. The Court held that under the Due Process Clause itself, a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id.* at 535, 99 S.Ct. at 1872–73. Concluding that not every disability imposed during pretrial detention amounts to impermissible punishment, the Court determined that

> if a particular condition or restriction of pretrial detention is reasonably related to a legitimate government objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

*Id.* at 539, 99 S.Ct. at 1874. Thus, this Court must determine whether the detention in isolation of pretrial detainees found guilty of assaulting another inmate is reasonably related to legitimate government objectives. *See Block v. Rutherford,* 468 U.S. 576, 586, 104 S.Ct. 3227, 3232–33, 82 L.Ed.2d 438 (1984).

■ The *Bell* court indicated that one of the government's legitimate interests in imposing a disability upon a pretrial detainee is the need to manage the facility in which the individual is detained, which includes reasonable steps taken to maintain security at the facility. *Bell,* 441 U.S. at 540, 99 S.Ct. at 1874–75. Notwithstanding this conclusion, the Court of Appeals for the Ninth Circuit in *Mitchell v. Dupnik,* 75 F.3d 517 (1996), held that a pretrial detainee may not be subjected to disciplinary segregation in the absence of a hearing in which the detainee is accorded the procedural protections articulated in

*Wolff. Mitchell,* 75 F.3d at 524–25. In reaching its holding, the Ninth Circuit stated that although the disciplinary segregation sanction at issue was not imposed as punishment for the crime that led to the prisoner's pretrial detention, but as punishment for violation of jail rules or policies, "[t]hat fact makes no analytical difference.... [T]here can be no question that the purpose and effect of [the prisoner's] segregated confinement was punishment." *Id.* at 524.

■ On this point, this Court must respectfully disagree. In *Bell,* the Supreme Court distinguished between punishment for the underlying crime, which is prohibited by the Due Process Clause prior to an adjudication of guilt, and regulatory restraints imposed to maintain the security of the prison, which are not. *Bell,* 441 U.S. at 537–40, 99 S.Ct. at 1873–75. The Court opined that

> the Government must be able to take steps to maintain security and order at the prison.... Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial.

*Id.* at 540, 99 S.Ct. at 1874–75. The Supreme Court reinforced this point in *Sandin* in its discussion of *Bell.* The Court concluded that "[t]he Court [in *Bell*] expressed concern that a State would attempt to punish a detainee for the crime for which he was indicted via precondition holding conditions." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2300. Thus, contrary to the Ninth Circuit's holding in *Mitchell, Bell* and *Sandin* evince that the Due Process Clause precludes only punishment for the crime that led to the inmate's pre-hearing detention, but not regulatory restraints which punish prisoners for violations of jail rules and policies.

In the present case, it is clear that the sanction imposed upon plaintiff was imposed in the interest of prison security. The isolation sanction was imposed on plaintiff as a result of the finding at his disciplinary hearing that he assaulted another inmate. Although plaintiff contends that the fifteen day isolation sanction was arbitrary and disproportionate to the circumstances of the crime, there is nothing in the record to support this contention. On the contrary, assault is classified in the SCI Rules Of Conduct as a Class I offense, which appears from the record to be the most serious class of offenses.[3] Defendant also indicates that the fifteen day isolation sanction was a lesser sanction than he was authorized to impose. [Affidavit of George Truitt, A–3, D.I. 39]. Finally, although plaintiff alleges that defendant unnecessarily and unjustifiably delayed his disciplinary hearing for eighteen days, there is no evidence in the record which indicates that this delay was unreasonable or that defendant's actions in the present matter arbitrarily differed from the treatment of other inmates who were the subject of a Class I disciplinary hearing.[4]

Moreover, the United States Supreme Court has cautioned that courts should play a limited role in the administration of a detention facility. *Bell,* 441 U.S. at 540 n. 23, 99 S.Ct. at 1875 n. 23. The Court indicated that when determining whether a given disability is reasonably related to maintaining security and order in the institution, courts must "heed our warning that '[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that officials have exaggerated their response to these considerations,

---

3. Although the parties have not produced the complete SCI Rules of Conduct, the record indicates that Class I offenses are "considered serious and should require automatic pre-hearing detention." [Plaintiff's Motion for Summary Judgment at 17, D.I. 41.] In addition, prisoners charged with Class I offenses are entitled to certain additional procedural protections at their disciplinary hearings. [*Id.* at 19].

4. Citing to his own affidavit, plaintiff asserts that prison regulations require Class I hearings to be conducted within 72 hours of placement in pre-hearing detention. [Brief of Plaintiff Vernon Cephas at 15, D.I. 42]. There is no evidence in the record to support plaintiff's assertion.

courts should ordinarily defer to their expert judgment in such matters.'" *Id.* (alteration in original) (citation omitted). A 15 day isolation sanction coupled with 18 days spent in administrative segregation does not constitute such an exaggerated response to plaintiff's conviction for assaulting another inmate so as to justify this court substituting its judgment for that of prison officials. Accordingly, the detention of plaintiff for 18 days in administrative segregation and 15 days in isolation is reasonably related to a legitimate government objective and does not constitute impermissible punishment under the Due Process Clause.

### IV.

■ Plaintiff also alleges that defendant's failure to protect him from the assault that occurred during his incarceration in administrative segregation amounted to a violation of his due process rights. It is well settled that a prison inmate enjoys a Fourteenth Amendment liberty interest in being protected from assault by other inmates. *Davidson v. O'Lone,* 752 F.2d 817, 821–22 (3d Cir.1984) (en banc), *aff'd sub. nom. Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1985). Prisoners are also afforded this right under the Eighth Amendment's prohibition of cruel and unusual punishment, *Young v. Quinlan,* 960 F.2d 351, 361 (3d Cir.1992), made applicable to pretrial detainees by the Due Process Clause. *City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983) (stating that "the due process rights of a [pretrial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner."). However, prison officials violate an inmate's liberty interest and his right to be free from cruel and unusual punishment only where they demonstrate intentional conduct or deliberate indifference in allowing a prisoner to be assaulted. *Young,* 960 F.2d at 360 (cruel and unusual punishment); *Davidson,* 752 F.2d at 828 (liberty interest).

■ A prison official is deliberately indifferent "when he knows or should have known of a sufficiently serious danger to an inmate." *Young,* 960 F.2d at 360–61. This standard

connotes something more than a negligent failure to appreciate the risk ..., though something less than a subjective appreciation of the risk. The "strong likelihood" of [harm] must be "so obvious that a lay person would easily recognize the necessity for" preventative action; the risk of ... injury must be not only great, but also sufficiently apparent that a lay custodian's failure to appreciate it evidences an absence of any concern for the welfare of his or her charges.

*Id.* at 361 (alterations in original) (citations omitted).

■ In the present case, there is no evidence in the record to indicate that defendant was actually aware of any risk to plaintiff prior to the occurrence of the assault. Additionally, there is no evidence to indicate that surrounding circumstances existed that should have made the risk of harm sufficiently apparent such that defendant's actions rise to the standard of deliberate indifference.

Plaintiff alleges that defendant was responsible for placing the perpetrator of the assault on plaintiff, Michael Smith, an allegedly chronically ill mental patient, in the same area as plaintiff. Plaintiff also alleges defendant's conduct rises to the level of deliberate indifference, because he unreasonably and unjustifiably delayed plaintiff's disciplinary hearing for 18 days during which time the assault occurred. However, there is no evidence in the record to support these allegations, nor does plaintiff allege any facts to support the conclusion that defendant should have known of any potential for harm or injury to plaintiff as a result of placing him in administrative segregation with Smith. Accordingly, plaintiff has not made out a claim for failure to protect under the Due Process Clause.