Luis M. ROMAN, Plaintiff,

v.

J. DONELLI, Superintendent, Bare
Hill Correctional Facility, et
al., Defendants.

No. 9:06–CV–1071 (GLS/GJD).

United States District Court,
N.D. New York.

Oct. 10, 2007.

Luis M. Roman, Malone, NY, pro se.

Andrew M. Cuomo, New York State, Attorney General (Gerald J. Rock, Assistant Attorney General, of Counsel), Albany, NY, for Defendant.

### *MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, District Judge.

#### I. *Introduction*

Plaintiff *pro se* Luis M. Roman ("Roman") brings this action pursuant to 42 U.S.C. § 1983. He alleges that the defendants violated his constitutional rights under the Eighth and Fourteenth Amendments by refusing to allow him to visit his wife on her deathbed or attend her funeral. *See Compl.; Dkt. No 1.* Defendants' pre-answer motion to dismiss was referred to Chief Magistrate Judge Gustave J. DiBianco for report and recommendation.[1] *See* Dkt. No. 23; *see also* 28 U.S.C.

1. The Clerk is directed to append Judge DiBianco's Report–Recommendation to this decision, and familiarity is presumed.

§ 636(b)(1)(A), (B); N.D.N.Y. R. 723(c); Gen. Order No. 12, § D(1)(G). Judge Di-Bianco recommended that the complaint be dismissed in its entirety.

Pending is Roman's specific objection to the recommendation that his equal protection claim be dismissed. *See Objection, Dkt. No. 24.* The court reviews this objection *de novo* and the remainder of the report for clear error. Upon careful consideration of the arguments, the relevant parts of the record, the applicable law, and the additional reasons cited, the court adopts the Report–Recommendation in its entirety and dismisses the complaint.

## II. *Standard of Review*

■ A party's objection to the findings and recommendations of the Magistrate Judge must be filed within 10 days of receiving the Magistrate's recommendation and order. *See Almonte v. N.Y. State Div. of Parole,* No. 9:04–CV–484, 2006 WL 149049, at *2–6 (N.D.N.Y. Jan. 18, 2006). Objections must be written and specific, which is to say they must "specify the findings and recommendations to which [the party] object[s], and the basis for their objections." *Id.*

■ Those recommendations and findings as to which the party has made timely, specific objection must be reviewed *de novo. Id.* However, those as to which the party has not made timely and/or specific objection are not entitled to any review, although the court may, in its discretion, elect to conduct a review nonetheless. *Id.* While the court may conduct a discretionary review pursuant to any standard it sees fit, this court has consistently applied a "clearly erroneous" standard. *Id.* Under this standard a recommendation or finding will be overturned only if "the court determines that there is a mistake of fact or law which is obvious and affects substantial rights." *Id.* Objections based on arguments not raised as a matter of first impression before the Magistrate Judge, and

which fail to respond to the findings of the Magistrate, are also not entitled to any review. *See Almonte,* 2006 WL 149049, at *2–6. In such a situation the court may again elect to conduct a discretionary review, this time using a *de novo* standard as a matter of necessity, since the Magistrate has not had an opportunity to pass on the argument. *See Id.*

## III. *Discussion*

### A. *Procedural Due Process and Eighth Amendment Claims*

■ Judge DiBianco has recommended that the defendants' motion to dismiss be granted on Roman's: (1) procedural due process claim, because "there is no constitutionally protected liberty or property interest in attending the funeral of a family member;" and (2) Eighth Amendment claim because there is no evidence "that defendants wantonly inflicted 'pain' upon plaintiff sufficient to rise to the level of an Eighth Amendment violation." *See R & R pgs. 4–9, Dkt. No. 23.* Since Roman has failed to object in any form to Judge Di-Bianco's recommendation on the Eighth Amendment claim, and has only non-specific, conclusory objections to the recommendation on the procedural due process claim, he has procedurally defaulted as to those claims. The court adopts Judge Di-Bianco's recommendations of dismissal on those claims in their entirety as they are devoid of clear error.

### B. *Equal Protection Claim*

■ Roman has specifically objected to Judge DiBianco's recommendation that his equal protection claim be dismissed. *See Objection, Dkt. No. 24.* Judge DiBianco found that Roman's relationship to his alleged wife was in dispute. *See R & R pg. 8, Dkt. No. 23.* Thus, in order to establish a selective treatment claim, Roman needed to show other inmates were allowed

deathbed and funeral visitation with dying persons to whom their relationships were in dispute, while he was denied such visitation. *See R & R pg. 8, Dkt. No. 23.* As Judge DiBianco noted, Roman failed to allege such different treatment between similarly situated inmates and thus his equal protection claim for selective treatment failed. *Id.*

Roman objects, alleging that other prisoners were permitted deathbed and funeral visits with non-family members, and seeks discovery of various inmates' records to establish this point. *See Objection ¶¶ 2–3, Dkt. No. 24.* This argument was not raised before Judge DiBianco, but is responsive to the findings and recommendation of dismissal. *See Compl.; Dkt. No 1.* Thus the court reviews the objection de novo, finds it without merit, and agrees with the recommendation of dismissal.

■ "To prevail on a selective treatment [equal protection] claim, a plaintiff must show that (1) he was treated differently from other similarly-situated individuals; and (2) the differential treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.' " *Skehan v. Vill. of Mamaroneck,* 465 F.3d 96, 110 (2d Cir.2006) (quoting *LaTrieste Rest. & Cabaret v. Vill. of Port Chester,* 40 F.3d 587, 590 (2d Cir. 1994)).

■ Roman alleges that he was denied deathbed and funeral visitation with his deceased wife, to whom his relationship was disputed, while other similarly situated inmates were allowed such visitation. *See Objection ¶¶ 2–3, Dkt. No. 24.* Even if we assume, *arguendo,* that these allegations are sufficient to satisfy the first prong under a selective treatment claim, Roman is still unable to meet the second prong. Roman fails to demonstrate that there was an "impermissible consider-

ation" on the part of the defendants. He does not allege race, religion or even bad faith played a role in the denial of his requested visitation, only that such denial was improper. Thus Roman cannot make out a selective treatment cause of action under the Equal Protection Clause.

### IV. *Conclusion*

Having reviewed the Report–Recommendation, and Roman's specific objection *de novo,* the court adopts Judge DiBianco's recommendation that the complaint be dismissed in its entirety for the reasons articulated in the Report–Recommendation and for the additional reasons recited herein.

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Judge DiBianco's August 28, 2007 Report–Recommendation (*Dkt. No. 23* ) is accepted and adopted in its entirety, the complaint is dismissed; and it is further

**ORDERED** that the Clerk of the Court enter judgment and close this case; and it is further

**ORDERED** that the Clerk of Court provide copies of this Order to the parties. **IT IS SO ORDERED.**

### REPORT–RECOMMENDATION

GUSTAVE J. DI BIANCO, United States Magistrate Judge.

This matter has been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, United States District Judge pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In this civil rights complaint, plaintiff alleges that he was denied the opportunity for a "bedside" visit to his wife prior to her death and then later denied a "funeral visit." (Dkt. No. 1). Plaintiff alleges that the defendants' actions violated both plain-

tiff's rights to Due Process and Equal Protection. Plaintiff seeks substantial monetary relief.

Presently before the court is the defendants' motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). (Dkt. No. 15). Plaintiff responded in opposition to the motion. (Dkt. No. 16). Defendants filed a reply, and plaintiff filed a sur-reply. (Dkt. Nos. 17, 19). For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.

## DISCUSSION

### 1. *Motion to Dismiss*

A court may not dismiss an action pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994) (citing *inter alia Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The court must accept the material facts alleged in the complaint as true. *Id.* (citing *Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964) (per curiam)). In determining whether a complaint states a cause of action, great liberality is afforded to *pro se* litigants. *Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir.1991) (citation omitted).

When considering a motion to dismiss for failure to state a claim, the court may consider the complaint, together with any documents attached as exhibits or incorporated by reference. *See Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir.1999). The court may also consider public documents and those of which judicial notice may be taken. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773–74 (2d Cir.1991). When matters outside the pleadings are presented, the court may either exclude those matters or treat the motion as one for summary judgment under FED.R.CIV.P. 56. FED. R. CIV. P. 12(b).

In this case, plaintiff has attached a number of documents to his complaint that the court will consider in conjunction with this motion to dismiss.

### 2. *Facts*

Plaintiff alleges that on June 6, 2006, he was notified by the Chaplain's Office at Bare Hill Correctional Facility that his wife was very ill and had been taken to the hospital. Complaint ¶ 6. Plaintiff states that on July 20, 2006, he learned that his wife was going to be moved to another hospital, and plaintiff told someone in the Chaplain's office that plaintiff would like to apply for a "bedside visit." *Id.*

Plaintiff claims that he was told that he needed to produce a document proving that the woman he wished to visit was his wife. Plaintiff did not have any such document with him in prison, so he had to obtain a copy from the Schenectady City Hall Clerk. Complaint ¶ 6, p. 2. Notwithstanding plaintiff's later submission of this document, plaintiff was denied the "bedside visit." *Id.* On August 5, 2006, plaintiff learned that his wife had died, and then requested that he be allowed to attend the funeral. *Id.* Plaintiff alleges that he asked someone in the Chaplain's Office to submit the required paperwork, and although this was accomplished, defendant Deputy Superintendent Jubert denied the requested funeral visit.

Plaintiff claims that the defendants acted in violation of the Department of Correctional Services Directives in failing to conduct a proper investigation into whether plaintiff should be allowed to attend his wife's funeral. Plaintiff also claims that the defendants violated his right to Equal Protection and Due Process when they denied him both the deathbed and funeral visits. Finally, plaintiff claims that defen-

dants violated his Eighth Amendment right to be free from cruel and unusual punishment. Complaint at ¶ 6, pp. 2(A)–3 & ¶ 7.

### 3. *Deathbed/Funeral Visit*

#### A. Due Process

█ In order for plaintiff to state a claim for the denial of due process, he must first allege that he was deprived of a liberty or property interest. *Verrone v. Jacobson*, 95 Civ. 10495, 1999 1999 WL 163197, *4, U.S. Dist. LEXIS 3593, *13 (S.D.N.Y. March 23, 1999). It is only if plaintiff can show that he had a protected liberty or property interest that the court can then determine whether the deprivation of that interest occurred without the process that was "due" under the circumstances. *Id.*

█ It is well-settled that there is no constitutionally protected liberty or property interest in attending the funeral of a family member. *Id.* at 1999 WL 163197, *4–5, 1999 1999 WL 163197, *14–15; *Odom v. Coombe*, 95 Civ. 6378, 1998 WL 120361, *3, 1998 U.S. Dist. LEXIS 3210, *8–9 (S.D.N.Y. March 18, 1998); *Mercer v. Green Haven Correctional Facility*, 94 Civ. 6238, 1998 WL 85734, *3–4, 1998 U.S. Dist. LEXIS 2108, *11–12 (S.D.N.Y. Feb. 27, 1998) (citations omitted); *Cruz v. Sielaff*, 767 F.Supp. 547, 550 (S.D.N.Y.1991). Thus, plaintiff has no right created by the constitution to attend or to receive approval for a deathbed or a funeral visit.

█ A state may create liberty or property interests that are not conferred by the constitution itself. *Cruz*, 767 F.Supp. at 550 (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 461, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)). In order for a state law, regula-

tion, or directive to create a protected liberty or property interest, the state must use "explicitly mandatory language," must place "substantive limitations on official discretion," and must require that a "particular result is to be reached" upon the finding of substantive predicates. *Id.* (citing *inter alia, Kentucky Dep't of Corrections*, 490 U.S. at 462–63, 109 S.Ct. 1904; *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983)).

The authority for deathbed [1] and funeral visits is articulated in section 113 of the New York Corrections Law. N.Y. CORRECT. LAW § 113. Section 113 simply states that the commissioner of correctional services *"may permit"* inmates to attend funerals of certain family members or to visit the individual if "death be imminent." *Id.* (emphasis added). The statute further provides that the power to grant these visits will be governed by rules and regulations promulgated by the commissioner. *Id.* There is **no mandatory language** in this statute that would confer a liberty interest in being afforded the opportunity to go on either one of these types of visits.

The notification of the death or grave illness of an inmate's family member is governed by Department of Correctional Services (DOCS) Directive No. 4206. There are two types of deathbed or funeral visits. One type is governed by DOCS Directive No. 4901: Transporting Prisoners, and is for those inmates who are **not eligible** to be released on their own and will have to be escorted to and from the visit. The second type of visit is governed by DOCS Directive No. 7001: Temporary Release Programs, and is for inmates who **would be eligible** for temporary release

---

**1.** Plaintiff uses the term "bedside" visit, however, the proper term is "deathbed" visit. This term is important because in order to get

approval for this type of visit, death must be "imminent." N.Y. CORRECT. LAW § 113.

and would be able to travel to and from the visit *without* a DOCS escort.

A review of DOCS Directive No. 4206 also shows that there is *no mandatory language* in that directive that would assure the approval of a deathbed or funeral visit if certain substantive criteria were met. This directive provides that, after a request for the visit is made, the chaplain or senior counselor summarizes all the relevant information regarding the inmate's relative and requests that the Superintendent *"consider a trip for the inmate."* DOCS Directive No. 4206(V). Once the Superintendent receives the request, he or she proceeds under either Directive No. 4901 for inmates that would have to be escorted and under Directive No. 7001 for inmates who would be eligible for a temporary release from the facility.[2]

■ Directive No. 4206 also provides that the chaplain or counselor must determine if the visit is permissible based upon a verification of family relationship, and must tell anyone who telephones the facility inquiring whether the inmate may attend the funeral or make the visit, that the visit is contingent upon both verification of relationship *and Superintendent approval.* DOCS Directive No. 4206(III). There is no mandatory language indicating that the Superintendent must approve any type of visit. Thus, no liberty interest is created by the statute or directives regarding *escorted* deathbed or funeral visits.[3] Because there was no liberty interest created, plaintiff's due process claim must fail.

■ Plaintiff also seems to claim that the defendants failed to conduct "a meaningful investigation." As stated above, since there is no liberty interest, there is also no standard for the degree of "investigation" that must be made to determine whether an inmate should be allowed to attend the requested visit. At best, this claim is one alleging that defendants were incorrect or negligent in their determination that plaintiff had not met the "relationship" requirement of the rules. Plaintiff cannot base a section 1983 case upon the negligent conduct of any defendant. *See Verrone v. Jacobsen,* 1999 WL 163197 at *5, 1999 U.S. Dist. LEXIS 3593 at *16 (citing *inter alia Daniels v. Williams,* 474 U.S. 327, 328 (1986); *Davidson v. Cannon,* 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986)).

■ The court would also point out that the documents attached to plaintiff's complaint indicate that the visits *were considered* and permission was denied in his case because the facility investigation showed that despite plaintiff's marriage certificate, there was a question as to whether plaintiff was still married to the woman who he wished to visit. *Compare* Plaintiff's Ex. A *with* Plaintiff's Ex. B–4. Plaintiff filed a grievance regarding the denial of the visitation, and the Superintendent's response was that the "[r]elationship was not established in that [sic] presentence report and reception record indicated marital status as divorced.... Funeral director indicated the deceased was divorced." Plaintiff's Ex. B–4.

Even if the information received by the facility were incorrect, or facility officials were negligent in failing to investigate further, plaintiff's claim does not rise to the level of a constitutional violation. Thus,

---

2. The court notes that plaintiff has not indicated that he is eligible for temporary release, thus, the court assumes that plaintiff is referring to an escorted deathbed or funeral visit.

3. This court makes *no findings* regarding any other types of visits. The court does note that

inmates who are eligible for temporary release are governed by the temporary release directives and regulations. *See* DOCS Directive No. 7001; 7 N.Y.C.R.R. §§ 1901.1 *et seq.*

any due process claims, including any claims of inadequate investigation may be dismissed.

### B. Equal Protection

In order to state an equal protection violation, plaintiff must show that he was selectively treated as compared to similarly situated inmates, and that his selective treatment was motivated by an impermissible consideration such as membership in a suspect class, retaliation for the exercise of a constitutional right, or malicious or bad faith intent to injure. *Birmingham v. Ogden,* 70 F.Supp.2d 353, 371 (S.D.N.Y. 1999).

 In this case, plaintiff claims that other inmates in similar circumstances were allowed to attend funerals or participate in death bed visits.[4] However, the documents that are attached to plaintiff's complaint show that there was a *factual dispute* regarding whether plaintiff was still married to his wife. At a minimum, plaintiff would have to show that another inmate whose relationship to the dying individual was *in question* was allowed to attend the visit while plaintiff's visit was denied. Plaintiff has not shown or alleged that another inmate who may have been divorced was allowed to attend his ex-wife's funeral or visit her deathbed. Thus, based on the complaint, plaintiff does not allege an equal protection violation.

### C. Cruel and Unusual Punishment

 Plaintiff alleges that defendants subjected him to cruel and unusual punishment by denying him the opportunity to see his wife before she died and to attend her funeral. The Eighth Amendment is violated by the unnecessary and wanton infliction of pain. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). *See also*

*Whitley v. Albers,* 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

 Considering that it was within the Superintendent's discretion to grant or deny the visits, plaintiff's claims do not support an inference that defendants wantonly inflicted "pain" upon plaintiff sufficient to rise to the level of an Eighth Amendment violation.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' motion to dismiss (Dkt. No. 15) be **GRANTED,** and the complaint **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 6(a), 6(e), 72.

---

4. Although plaintiff submits the declaration of another inmate, the court cannot consider the document on a motion to dismiss because it was not attached to the complaint or incorporated by reference in the complaint. FED. R. CIV. P. 12(b)(6).